UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRI LOBIANCO and LOUIS LOBIANCO, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 21-cv-4180<br>)<br>) Judge Marvin E. Aspen |
| BONEFISH GRILL, LLC, | )<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiffs Terri and Louis Lobianco are suing Defendant Bonefish Grill, LLC ("Bonefish") for negligence and loss of consortium due to injuries that Terri suffered when she slipped and fell in a restaurant owned and operated by Bonefish. (Complaint (Dkt. No. 1-1).)[1] Bonefish now moves for summary judgment on Plaintiffs' claims. (Defendant's Motion for Summary Judgment (Dkt. No. 39); Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s Summ. J. Mem.") (Dkt. No. 40).) For the reasons that follow, we grant Bonefish's motion for summary judgment.

**FACTUAL BACKGROUND**

We take the following facts from the parties' Local Rule 56.1 submissions,[2] the materials cited therein, and other aspects of the record in this case. All facts are genuinely undisputed unless otherwise noted.

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] *See* Defendant's Rule 56.1(a) Statement of Undisputed Facts in Support of Motion for Summary Judgment ("Def.'s SOF") (Dkt. No. 41); Plaintiffs' Response to Defendant's

In July 2019, Terri Lobianco ate dinner at a Bonefish restaurant in Skokie, Illinois with her sisters, Nancy Hayes and Christy Russell. (Pl.'s Resp. to Def.'s SOF ¶¶ 9–10.) The three sisters sat in a booth on the east side of the dining area. (Dkt. No. 48-2, Ex. A ("Terri Lobianco Dep.") at 85:3–9.) Toward the end of the meal, Terri got up to use the bathroom at the back of the restaurant. (Pl.'s Resp. to Def.'s SOF ¶ 14.) As she returned to her table, Terri slipped and fell on the wood floor. (*Id.*) Terri testified that she felt a puddle of water while lying on the floor, but prior to Terri's fall, she did not notice it. (*Id.* ¶¶ 21–25; Terri Lobianco Dep. at 44:10–18, 45:19–46:3.)

Terri and her sisters testified that an unidentified female waitress approached Terri after the fall. (Def.'s Resp. to Pl.'s SOAF ¶¶ 17–18; Pl.'s Resp. to Def.'s SOF ¶ 27.) Terri testified that she told her sister Nancy that she had slipped on some water, and the waitress stated, "I told them to wipe that up." (Terri Lobianco Dep. at 52: 11–15; Dkt. No. 41-1, Ex. C ("Russell Dep.") at 47:7–12, Ex. E ("Hayes Dep.") at 30:22–23).) The restaurant's manager, Jim St. Leger, also approached Terri and knelt beside her to offer assistance. (Pl.'s Resp. to Def.'s SOF ¶ 49.) St. Leger testified that when Terri was lying on the floor, he did not see water or any other substance on the ground that could have caused her to fall. (Dkt. No. 41-1, Ex. I ("St. Leger Dep.") at 103:7–24.) Terri stated that St. Leger asked her where the water was, and she replied, "I'm laying in it." (Pl.'s Resp. to Def.'s SOF ¶ 26.) Leger does not remember the exchange. (St. Leger Dep. at 74: 1–3.) Sean Maloney, the server who was assigned to Terri's table for the night, was unaware of the entire incident. (Pl.'s Resp. to Def.'s SOF ¶ 55.)

---

Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl.'s Resp. to Def.'s SOF") (Dkt. No. 48); Plaintiff's Additional Statements of Material Fact ("Pl.'s SOAF") (Dkt. No. 49); Defendant's Response to Plaintiff's Additional Statement of Material Facts ("Def.'s Resp. to Pl.'s SOAF") (Dkt. No. 54).

A group of four other customers—Fay Chin, Yolande Chin, Roger Attia, and Judy Abelson—were also dining together at the restaurant that evening. (Pl.'s Resp. to Def.'s SOF ¶ 40.) Except for Yolande Chin, each was deposed and testified that they did not notice any water on the floor. (*Id.* ¶¶ 42–52.) Abelson testified that she did not see water on the floor before or after Terri fell. (*Id.* ¶ 42; Dkt. No. 41-1, Ex. F ("Abelson Dep.") at 47:9–11.) Attia testified that he neither stepped in nor noticed any water on the floor when he went to use the bathroom. (Pl.'s Resp. to Def.'s SOF ¶ 44; Dkt. No. 41-1, Ex. G ("Attia Dep.") at 21:15–19, 22:7–11.) And Fay Chin testified that he approached Terri after her fall to help, kneeled next to her, and did not slip or notice any water on the floor. (*Id.* ¶¶ 46–48; Dkt. No. 41-1, Ex. H ("Chin Dep.") 67:13–17.)

Following the incident, Terri was transported to Skokie Hospital's emergency room. (Dkt. No. 47-1, Ex. J at 17.) She was diagnosed with a dislocated hip and needed surgery to treat the injury. (*Id.* Ex. L at 14.) Louis Lobianco, Terri's husband, met up with her at the hospital and noticed that her dress was wet. (*Id.* Ex. M. at 17–18.) Terri told Louis that the wetness came from a puddle at the restaurant that she slipped on. (*Id.*)

**PROCEDURAL HISTORY AND JURISDICTION**

Plaintiffs filed their Complaint in the Circuit Court of Cook County, Illinois. (Complaint (Dkt. No. 1-1).) Bonefish removed the case to this Court based on diversity jurisdiction and answered the Complaint. (Notice of Removal (Dkt. No. 1); Answer (Dkt. No. 10).) Although Plaintiffs did not object to removal, we have an independent obligation to ensure that diversity jurisdiction exists. *Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 768 F.2d 189, 190 (7th Cir. 1985) ("Federal courts have an independent obligation to confine themselves to the jurisdiction that has been given them by the Constitution and by Congress.").

To determine whether jurisdiction is proper, we review the allegations in the Complaint and the Notice of Removal in light of the requirements of Federal Rule of Civil Procedure 8. *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014)). We find that the allegations in Bonefish's Notice of Removal and the underlying state court Complaint sufficiently allege diversity jurisdiction.

Bonefish has alleged, and Plaintiffs have not contested, that Plaintiffs are citizens of Illinois and Bonefish is a citizen of Delaware and Florida for diversity purposes. (Notice of Removal ¶¶ 5–6.) The uncontested allegations in the Notice of Removal also indicate that the amount in controversy exceeds $75,000. (*Id.* ¶ 8.) "Just as we generally accept the plaintiff's good-faith allegations of the amount in controversy to establish diversity jurisdiction, 'when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.'" *Roppo*, 869 F.3d at 579 (quoting *Dart Cherokee Basin*, 574 U.S. at 87.) Because the allegations in the Complaint and accompanying Notice of Removal indicate that the parties are completely diverse and the amount in controversy is met, we have jurisdiction over Plaintiffs' case. 28 U.S.C. § 1332.

**ANALYSIS**

We may grant a motion for summary judgment where "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Orozco v. Dart*, 64 F.4th 806, 814 (7th Cir. 2023) (citation omitted). In making this determination, "[w]e consider all of the evidence in the record in the light most favorable to the non-moving party, and we draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Donald v. Wexford Health*

4

*Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (citation omitted). We will not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Orozco*, 64 F.4th at 814 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). But "a party who fails to produce evidence sufficient to establish an element essential to that party's case on which they bear the burden of proof cannot survive a summary judgment challenge." *Id.* (citation omitted).

Plaintiffs bring claims for negligence and loss of consortium. (*See* Complaint). In a diversity action such as this one, we apply Illinois choice-of-law rules to determine which state's substantive law applies. *W. Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). Neither party disputes that Illinois substantive law applies. (*See generally* Def.'s Summ. J. Mem.; Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Pl.'s Summ. J. Opp'n.").) "Where the parties agree on the law that governs a dispute, and there is at least a 'reasonable relation' between the dispute and the forum whose law has been selected by the parties, 'we will forego an independent analysis of the choice-of-law issue and apply [the parties' choice].'" *Harter v. Iowa Grain Co.*, 220 F.3d 544, 560 n.12 (7th Cir. 2000) (quoting *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 231 n. 5 (1st Cir.1993)). Here, there is a "reasonable relation" between the dispute and the forum because the injury and the conduct allegedly giving rise to it occurred in Illinois. Plaintiffs are Illinois residents and the restaurant where Terri Lobianco was allegedly injured was in Skokie, Illinois.[3] We therefore apply Illinois law to Plaintiffs' negligence and loss of consortium claims. *Harter*, 220 F.3d at 560 n.12.

---

[3] The restaurant closed in March of 2022. (*See, e.g.*, Dkt. No. 48-2, Ex. G at 10:16–21.)

I.   **Plaintiffs' Negligence Claim**

We first address Plaintiffs' negligence claim. "To establish a cause of action for negligence under Illinois law, a plaintiff must prove: '(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by the breach.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (quoting *Wilfong v. L.J. Dodd Constr.*, 401 Ill. App. 3d 1044, 1051 (2d Dist. 2010)). "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). The parties do not dispute that Bonefish owed Terri a duty of care as an invitee. (*See generally* Def.'s Summ. J. Mem.; Pl.'s Summ. J. Opp'n). Instead, they dispute whether Bonefish breached this duty, and whether this alleged breach was the proximate cause of Terri's injury. We address each of these arguments in turn.

**A. Breach**

We first consider whether Plaintiffs have met their burden of demonstrating that Bonefish breached its duty of care. As a threshold matter, there is very little evidence in the record that the hazardous condition (the puddle) existed at all. No one who has been deposed in this case, including Terri, testified that they saw a puddle on the ground prior to Terri's fall. The only evidence of the puddle comes from three statements made after the fall occurred: Terri's testimony that she felt wetness while lying on the ground after she had fallen, the unidentified waitress's statement "I told them to wipe that up," and Louis Lobianco's testimony that he noticed Terri's dress was wet after she had been taken to the hospital.

Assuming that this testimony is sufficient to establish the existence of a hazard, this is only the first hurdle that Plaintiffs must surmount to meet their burden of proof on the issue of breach. Bonefish may be liable for an injury resulting from a dangerous condition on its

premises only if it either caused the spill or it had actual or constructive notice of it. *Zuppardi*, 770 F.3d at 649–51. "[A]ctual notice cannot be found where '[t]here is no evidence that defendant or any of its employees were responsible for or knew of the existence of a foreign substance[.]'" *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 971 (N.D. Ill. 2007) (quoting *Erkol v. Marshall Field & Co.*, No. 88 C 1171, 1989 WL 18248, at *2 (N.D. Ill. Mar.1, 1989)). Constructive notice requires evidence that "(1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." *Zuppardi*, 770 F.3d at 651 (internal citation omitted). "Generally, an employee's knowledge of a dangerous condition or spilled substance on the premises is considered sufficient to impute notice to a defendant employer." *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1065 (1st Dist. 2001).

Plaintiffs have put forth no evidence indicating that Bonefish or its employees caused the spill rather than a customer. (*See generally* Pl.'s Resp. to Def.'s SOF; Def.'s Resp. to Pl.'s SOAF.) They point to only a single piece of evidence in the record demonstrating that Bonefish had actual notice of the puddle: the unidentified waitress's statement: "I told them to wipe them up." (Def.'s Resp. to Pl.'s SOAF ¶ 10.) Because Plaintiffs seek to use this statement for the truth of the matter asserted (*i.e.*, that the waitress told someone to wipe up the puddle), this statement is presumptively hearsay and may not be considered unless an exclusion or an exception applies. *See* Fed. R. Evid. 801(c), 802; *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) ("If the evidence is inadmissible hearsay, the courts may not consider it [on summary judgment]."). Plaintiffs "bear[] the burden of establishing that the statement is admissible."

7

*Hartford Fire Ins. Co. v. Taylor,* 903 F. Supp. 2d 623, 640 (N.D. Ill. 2012) (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).

Plaintiffs argue that because the statement was made by a waitress employed by Bonefish, it is non-hearsay. (*See* Pl.'s Summ. J. Opp'n at 8 (citing Fed. R. Evid. 801(d)(2)(D)).) We agree. Federal Rule of Evidence 801(d)(2)(D) provides that a "statement offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is admissible non-hearsay. There are "two relevant requirements" for a statement to be admissible under Rule 801(d)(2)(D). *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003). First, the statement "must be an admission" and, second, the statement must be made "concerning a matter within the scope" of the employment. *Id.*

The waitress's statement qualifies as an admission, which "'need not be inculpatory,' but rather, [] 'need only be made by the party against whom it is offered.'" *Miller v. TGI Friday's, Inc.*, No. 05 C 6445, 2007 WL 723426, at *4 (N.D. Ill. March 5, 2007) (quoting *United States v. McGee*, 189 F.3d 626, 631–32 (7th Cir. 1999)). Both Terri and her sisters testified that a waitress approached Terri after her fall and told Terri that "I told them to clean that up." (Terri Lobianco Dep. at 52: 11–15; Dkt. No. 41-1, Ex. C ("Russell Dep.") at 47:7–12, Ex. E ("Hayes Dep.") at 30:22–23).) Terri and her sister Nancy testified that the waitress was wearing the black pants and a white shirt—the uniform of Bonefish employees. (Terri Lobianco Dep. 54:1–3; Hayes Dep. at 30:16.) The presence of a waitress after Terri fell was also confirmed by the independent testimony of Judy Abelson. (Abelson Dep. 37:18–19, 38:5.) There is sufficient evidence to conclude that that the statement was made by an employee of Bonefish.

8

The waitress's admission is attributable to Bonefish if it was made in the scope of her employment. *See Pavlik*, 323 Ill. App. 3d at 1064–65 (citing Fed. R. Evid. 801(d)(2)(D)). Terri's testimony indicates that the waitress was responding to Terri's injury and her report of a hazardous condition at the time she made the alleged statement. Thus, there is evidence that the waitress was "performing the duties of [her] employment when [she came] in contact with the particular facts at issue." *Aliotta*, 315 F.3d at 761.

The facts of *Pavlik* are instructive. 323 Ill. App. 3d 1060. There, the Illinois Appellate Court, applying the state-law analogue of Rule 801(d)(2)(D), reversed a grant of summary judgment and held that an unidentified employee's statement to the plaintiff—"oh, she was supposed to clean that up and she didn't"—was admissible non-hearsay evidence that the defendant had notice of a hazardous condition on its premises. *Id.* at 1063–66. The Appellate Court found that the employee's statement was a sufficient basis to impute actual knowledge of the dangerous condition to the defendant, stating "an employee has a responsibility either to correct the unsafe condition or clean the spilled substance from the floor, or report the problem to her superiors." *Id.* at 1066. Other courts in this district have followed *Pavlik*'s approach and denied summary judgment because of an out-of-court admission made by an employee. *See Brama v. Target Corp.*, No. 14 C 06098, 2017 WL 2404954, at *3 (N.D. Ill. June 2, 2017); *Miller*, 2007 WL 723426, at *4.

We follow the approach of *Pavlik* and find that the unidentified waitress's statement is admissible non-hearsay evidence that Bonefish had actual notice of the hazardous condition. Because the waitress's statement is admissible and sufficient to impute actual knowledge of the puddle to Bonefish, we find that there is a genuine issue of material fact precluding summary judgment on the issue of breach.

9

## B. Causation

We next turn to the question of causation. Plaintiffs' negligence claim cannot survive summary judgment without evidence of proximate causation. *Dunn*, 880 F.3d at 906. Although proximate cause is typically a question of fact, "the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." *See City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395–96 (2004) (citation omitted). Cause in fact is present "when there is a reasonable certainty that a defendant's acts caused the injury or damage" (applying the traditional "but-for" or the "substantial factor" test). *Lee v. Chi. Transit Auth.*, 152 Ill. 2d 432, 455 (1992). Legal cause is present "if the injury is the type of injury that a reasonable person would see as a 'likely result' of his or her conduct." *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 24.

Here, the evidence presented is insufficient to create a genuine issue of material fact allowing Plaintiffs to escape summary judgment. First, the only direct evidence of causation comes from Terri's testimony that she felt a puddle of water on the ground after her fall. (Terri Lobianco Dep. at 45:19–24, 46:1–3.) Terri testified that she did not see the puddle of water on the floor before she fell. (*Id.* at 44:10–46:3.) And her testimony indicates that she had no sensory perception of the water until she was lying on the ground. (*Id.* at 44:16–18.) Although Terri states at various points that she "slipped on water," when questioned she admitted that she did not know whether this was the case. (*Id.* at 56:14-16.) There is no testimony indicating that Terri felt water on her shoe as she was falling to the ground or immediately before she tripped. (*See generally id.*)

Even when viewed in the light most favorable to Plaintiffs, this testimony does not establish that the puddle was an actual cause of Terri's injury. *See Kimbrough v. Jewel*

10

*Companies, Inc.*, 92 Ill. App. 3d 813, 817-18 (1st Dist. 1981) (granting summary judgment on plaintiff's negligence claim where plaintiff admitted in her deposition that she did not know what caused her to fall). The fact that Terri felt wetness *after* she fell is insufficient to demonstrate that she slipped on the puddle—especially given that there is no eyewitness testimony (other than the waitress's out-of-court statement) to suggest that the puddle existed in the first place and no testimony whatsoever as to the precise location of the puddle. *See Palumbo v. Frank's Nursery & Crafts, Inc.*, 182 Ill. App. 3d 283, 288, (1st Dist. 1989) (granting summary judgment on causation grounds where eyewitnesses admitted that they did not see water on the floor).

Courts in this district have granted summary judgment for defendants on Illinois law negligence claims on analogous facts, where there is scant evidence of both the hazard and causation. *See Malacina v. Meijer Stores Ltd. P'ship,* No. 12 C 6077, 2014 WL 1202527, at *4 (N.D. Ill. Mar. 18, 2014) (granting summary judgment where the only evidence of causation was plaintiff's testimony that "she felt wetness for a moment while she was on the store floor and noticed residue on the back of her pants later that night"); *Atkins v. United States*, No. 93 C 243, 1995 WL 153283, at *5 (N.D. Ill. Apr. 6, 1995) (granting summary judgment where the only evidence of causation was plaintiff's testimony "that her hand felt some wetness when she fell, combined with a wet spot on her pants of some size greater than one inch"); *Erkol*, 1989 WL 18248, at *4 (granting summary judgment where the only evidence that a foreign substance existed on the floor where the plaintiff fell was plaintiff's perception that her hand and dress were a little wet after the fall).

Plaintiffs cite *Caburnay v. Norwegian American Hospital*, 2011 IL App (1st) 101740, for the proposition that a plaintiff's sensory perception is sufficient to establish proximate cause. In *Caburnay*, the Appellate Court reversed a grant of summary judgment based on the plaintiff's

testimony that he felt his foot catch on the mat as he tripped. *Id.* ¶ 30. The timing of the sensory perception relative to the plaintiff's injury makes this case distinguishable. In *Caburnay*, the plaintiff's sensory perception of the dangerous condition either preceded or was contemporaneous with his injury. Here, however, Terri's perception occurred *after* the fall had taken place. Terri's after-the-fact perception of the puddle is an inadequate basis upon which to infer that it caused her injury. *See, e.g.*, *Kimbrough*, 92 Ill. App. 3d at 817 (liability cannot be predicated "upon surmise or conjecture as to the cause of injury"); *accord Palumbo*, 182 Ill. App. 3d at 288; *see also Trahanas v. Nw. Univ.*, 64 F.4th 842, 852 (7th Cir. 2023) (quoting *Anderson*, 477 U.S. at 249) ("[A] 'mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to survive summary judgment.").

    Plaintiffs also appeal to circumstantial evidence to support causation. (Pl.'s Summ. J. Opp'n at 12.) But "[w]hen relying on circumstantial evidence to establish causation under Illinois law . . . 'the conclusion sought must be more than speculative; rather the conclusion must be the only probable conclusion.'" *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 850 (7th Cir. 2017) (quoting *Williams v. Chi. Bd. of Educ.*, 267 Ill. App. 3d 446, 452 (1st Dist. 1994)). The two pieces of circumstantial evidence that Plaintiffs identify—the unidentified waitress's testimony and Louis' testimony that he felt Terri's dress at the hospital and that the dress was wet—do not meet this standard.

    The waitress arrived on the scene after Terri fell and did not witness her fall. (Terri Lobianco Dep. at 52:13–15.) Her statement that "I told them to wipe that up" was made in response to Terri's prior assertion that she "slipped on water." (*See id.*) Because the waitress was responding to Terri's explanation of what happened and did not see the fall take place, her testimony does not raise a genuine issue of material fact regarding causation. Likewise, the fact

12

that Louis felt wetness on Terri's dress in the hospital does not make it probable (as opposed to possible) that Terri slipped on a puddle of water. As Bonefish points out, Terri's dress could have gotten wet during her trip to the bathroom or while she was transported to the hospital. (Defendant's Reply in Support of Motion for Summary Judgment ("Def.'s Summ. J. Reply") (Dkt. No. 55) at 7.) On summary judgment, we may not draw "inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010); *see also Keating v. 68th & Paxton L.L.C.*, 401 Ill. App. 3d 456, 473 (1st Dist. 2010) ("[W]here the proven facts demonstrate that the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion that exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be permitted to make that inference.").) There is insufficient circumstantial evidence upon which to conclude that the alleged puddle proximately caused plaintiff's injury.

Plaintiffs also rely on *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 798 (2d Dist. 1999). But in *Wiegman*, two eyewitnesses testified that the floor all around the plaintiff was wet after her fall and the plaintiff's body was positioned in a manner indicative of a slip. *Id.* Here, there is no corroborating testimony besides the waitress's out-of-court statement that the floor was wet and no evidence indicating that Terri's body was positioned in a manner indicative of a slip after she fell. The facts are more analogous to those of *Palumbo*, where eyewitnesses uniformly testified that they did not see any liquid or debris on the ground before or after the incident. 182 Ill. App. 3d at 288.

Plaintiffs also point to the report of their expert, Anthony Fenton, a licensed and nationally certified architect, to support causation. (*See* Pl.'s Summ. J. Opp'n at 4–5.) Plaintiffs retained Fenton to determine whether the restaurant floor was dangerous in a manner that caused

13

Terri's slip and fall and whether those responsible for maintenance created the dangerous condition. (*See id.* (citing Dkt. No. 48-2, Ex. E ("Fenton Rep.") at 2.) Fenton testified that Terri slipped and fell because the dining-room hardwood floor was dangerously slippery when wet. (Dkt. No. 48-2, Ex. D ("Fenton Dep.") at 35.) His methodology consisted of performing an on-site investigation testing the slip resistance on the floor in the restaurant. (Fenton Rep. at 4, § 4.3.)

Fenton's testimony demonstrates, at most, that if there had been a puddle on the floor of the restaurant, this would have constituted a hazardous condition. It does not provide a basis to infer that Terri slipped on it. Moreover, Fenton conducted his on-site examination approximately three years after the restaurant had closed. (Def.'s Resp. to Pl.'s SOAF ¶ 7.) Fenton's testimony is insufficient to create a genuine issue of material fact with respect to proximate cause. *See Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 975 (1st Dist. 1990) (affirming summary judgment on the grounds that expert's testimony indicated nothing more than a "possibility" that the dangerous condition had caused plaintiff to slip and was therefore insufficient to establish a causal relationship); *accord Yang v. Air China Ltd.*, No. 14 C 6482, 2017 WL 4283953, at *10 (N.D. Ill. Sept. 27, 2017).

In sum, we find that the evidence presented by Plaintiffs (both direct and circumstantial) is insufficient to demonstrate proximate cause. Because Plaintiffs have failed to meet their burden of proof with respect to proximate causation, we grant Bonefish's motion for summary judgment.

## II.     Louis' Loss of Consortium Claim

Finally, we address Louis' loss of consortium claim. Under Illinois law, a claim for loss of consortium is derivative of the underlying tort. *See Blagg v. Ill. F.W.D. Truck & Equip. Co.*, 143 Ill. 2d 188, 201 (1991). Louis cannot recover for loss of consortium against Bonefish unless

Bonefish is liable for the injuries suffered by Terri. Because we have granted summary judgment on Plaintiffs' negligence claim, summary judgment is also appropriate on Louis' loss of consortium claim. See *Johnson v. XTRA Lease LLC*, No. 08 C 5042, 2010 WL 706037, at *4 (N.D. Ill. Feb. 24, 2010); *Bodnar v. Outboard Marine Corp.*, No. 90 C 03860, 1991 WL 127234, at *4 (N.D. Ill. July 5, 1991).

## CONCLUSION

For the foregoing reasons, Bonefish's summary judgment motion (Dkt. No. 39) is granted. Judgment is entered for Defendant and against Plaintiffs on all of Plaintiffs' claims. Civil case is terminated.

_____
Marvin E. Aspen
United States District Judge

Dated: June 7, 2023